IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



JANICE CALVERLY,　　　　　　　§
　　　　　　　　　　　　　　　　§
　　　　　Plaintiff,　　　　　　§
　　　　　　　　　　　　　　　　§
VS.　　　　　　　　　　　　　　§　NO. 4:09-CV-701-A
　　　　　　　　　　　　　　　　§
HARTFORD LIFE AND ACCIDENT　　 §
INSURANCE COMPANY, ET AL.,　　 §
　　　　　　　　　　　　　　　　§
　　　　　Defendants.　　　　　 §

MEMORANDUM OPINION
and
ORDER

Now before the court for consideration are the following motions filed in the above-captioned action: motion for summary judgment, filed by defendant Hartford Life and Accident Insurance Company ("Hartford"); motion to dismiss pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure, filed by defendant Merrick Bank Corporation ("Merrick");[1] motion for continuance of defendant's summary judgment motion, filed in

---

[1] Merrick claims, apparently without contradiction, that it was improperly named in this suit as Merrick National Bank, N.A., and its correct name is Merrick Bank Corporation, which is the name the court uses for this defendant. Additionally, plaintiff's name in the style of the case is "Janice Calverly," and it is thus spelled on the state court petition by which she instituted this litigation. The court notes that documents submitted in conjunction with the various motions or responses show that the correct spelling of plaintiff's last name should be "Calverley." The parties use both spellings in the various filings with the court; however, the court will use the correct spelling.

conjunction with the response of plaintiff, Janice Calverley,[2] to Hartford's summary judgment motion; and plaintiff's amended motion for leave to a second amended complaint.[2] Having reviewed the motions, responses, replies, the entire record in this case, and applicable legal authorities, the court concludes that the motion for summary judgment should be granted, and the motion for continuance, motion to amend, and motion to dismiss should be denied.

I.

Background and Plaintiff's Claims

Plaintiff initiated this removed action by the filing on October 26, 2009, of a petition in the district court of Parker County, Texas, naming Hartford as the only defendant. In the petition, plaintiff contends that Hartford wrongfully failed to pay the $250,000 proceeds of a life insurance policy obtained by her husband, John Calverley ("J. Calverley"), prior to his death.

On July 13, 2010, the last day to amend pleadings as set forth in the order setting schedule signed by the court on

---

[2]Merrick filed its motion to dismiss on August 10, 2010. In conjunction with her response to the motion to dismiss, plaintiff also filed a motion to amend pleadings on September 3, 2010. Merrick filed its response to the motion to amend on September 17, 2010, and on September 20, 2010, plaintiff filed her amended motion to amend. Thus, the court will consider that the first motion to amend was rendered moot by the filing of the amended motion to amend.

February 9, 2010, plaintiff filed her first amended original complaint and request for disclosure, naming Merrick as a defendant. Plaintiff alleged that Merrick failed and refused to honor payment requests by Hartford for payment of premiums on Calverley's life insurance policy, resulting in attempts by Hartford to cancel the policy.

Plaintiff seeks recovery from both defendants for breach of contract and violation of the Texas Deceptive Trade Practices Act ("DTPA"), and against Hartford for violation of Article 21.55 of the Texas Insurance Code.

## II.

## The Parties' Motions

A. Hartford's Motion for Summary Judgment and
   Plaintiff's Motion for Continuance

Hartford contends that it is entitled to summary judgment because plaintiff cannot establish that J. Calverley had accidental death coverage at the time of his death, the evidence establishes that J. Calverley's coverage had lapsed at the time of his death, there is no evidence that Hartford failed to pay a valid claim, and no evidence exists that establishes any violation of the DTPA.

Plaintiff seeks a continuance of the summary judgment motion in order to serve additional discovery on Merrick related to its alleged failure to charge premiums to J. Calverley's account and to determine the origins of a document by which J. Calverley obtained the insurance policy in question.

B.  <u>Merrick's Motion to Dismiss</u>

Merrick contends that the claims against it in the First Amended Original Petition should be dismissed either for lack of subject matter jurisdiction or for failure to state a claim for relief. As to plaintiff's DTPA claims, Merrick argues that plaintiff is not a consumer under the DTPA, she lacks standing to bring such a claim because no misrepresentations were made to her, DTPA claims do not survive the death of the consumer, the DTPA claims sound in contract only and are precluded by the economic loss rule, and limitations have run on any DTPA claim. Merrick further argues that plaintiff lacks standing to bring the breach of contract claim, as she was not a party to the cardholder agreement between J. Calverley and Merrick.

C.  <u>Plaintiff's Amended Motion for Leave to Amend</u>

Plaintiff seeks leave to file her second amended complaint, primarily to add an additional claim against Hartford and Merrick for joint enterprise.

III.

## Undisputed Facts

The following facts are undisputed in the record:

On an unknown date, J. Calverley opened a credit card account with Merrick. On February 11, 2004, J. Calverley signed a document bearing a heading of "activation form." Hartford's App. in Supp. of Mot. for Summ. J. at 4 ("Hartford's App."). The origins of the activation form or how it came to the attention of J. Calverley are not in the record. The activation form indicates that $1,000 of coverage ("Basic Coverage") would be paid by Merrick, and offers the prospective insured the opportunity to purchase additional coverage ("Voluntary Coverage"),[3] up to $250,000, by checking the appropriate box on the form, then signing and returning it.[4] By selecting Voluntary Coverage, the insured "authorize[d] Merrick Bank and its service provider to automatically charge [his] account quarterly according to the rate schedule for any additional coverage" selected. Id.

---

[3] The Hartford policy refers to the bank-paid $1,000 coverage as "Basic" and any additional amounts purchased by the insured as "Voluntary."

[4] The activation form does not make clear to whom or where the respondent is to return the form, as the only instruction to that effect on the form is to "drop in the mail before March 5, 2004." Hartford App. at 4.

5

J. Calverley checked the box selecting $250,000 of Voluntary Coverage, named plaintiff as his beneficiary, and signed the form.

Hartford issued policy number ADD-10900 to the policyholder, Financial Services Association, under which J. Calverley was an Insured Person.[5] Hartford also issued to J. Calverley a certificate of insurance setting out the policy terms and bearing the following information: J. Calverley was the insured; the effective date of coverage was December 1, 2004; Merrick was the participating financial organization; the premium amount was $123.75 quarterly; the principal amount of Basic Coverage was $1,000; and the principal amount of Voluntary Coverage was $250,000. The following additional pertinent provisions are set forth in the policy and included in the certificate of insurance:

> **Note**: Premiums will automatically be charged to your credit card the first week of each quarter beginning with the effective date indicated above.
>
> . . . .
>
> **INSURED PERSON PERIOD OF COVERAGE**: . . . **Termination**: . . . Your coverage under the Voluntary Plan, if

---

[5]The activation form indicates it is an offer for an "insurance plan offered by Continental Casualty Company." Hartford's App. at 4. It appears the original policy was issued by Continental Casualty Company, and at some point Hartford became the insurer. Language in Hartford policy number ADD-10900 describes the policy issued by Continental Casualty Company as the "Prior Policy" and indicates coverage will continue for the same amount as the insured was covered under the "Prior Policy." Id. at 6. The details of why and how Hartford became the insurer are not before the court.

6

> elected, terminates on the earlier of: a) the date the
> Policy is terminated . . . or d) the Premium Due Date
> on which you fail to pay any required premium for
> Voluntary Benefits subject to the Individual Grace
> Period provision.
>
> . . . .
>
> **Individual Grace Period:** After the first premium has
> been paid, you will have a 31 day grace period
> following the date your premium is due. If your
> premium has not been received by Us before the 31 day
> grace period ends, your Voluntary coverage under the
> Policy will terminate in accordance with the
> Termination provision unless reinstated. **Reinstatement
> Following Termination:** Any coverage which is
> reinstated will cover only those losses under this
> Policy which result from Injury which you and your
> Covered Dependents sustained on or after the first day
> of the period to which the reinstatement premium
> payment is applied.
>
> . . . .

Id. at 18, 23-24. Per the terms of the policy, premiums were due on the effective date of coverage and at the start of each premium cycle thereafter, which for J. Calverley was the first week of each quarter.

Hartford attempted to charge J. Calverley's Merrick account for the premium due on March 1, 2005; however, the payment was rejected. Hartford thereafter sent J. Calverley a past due notice dated March 10, 2005, informing him that Hartford had been unable to collect the insurance premium from his account, which would result in cancellation at the end of the thirty-one-day

grace period unless payment was made by April 24, 2005. The premium was paid on April 11, 2005.

On September 6, 2006, Hartford attempted to charge the next quarterly premium to J. Calverley's Merrick account, but, as before, the payment was rejected. Hartford's attempt to rebill the account on September 15, 2006, was similarly rejected. Hartford sent J. Calverley a past due notice dated September 18, 2006, informing him that the policy would be cancelled as of the end of the thirty-one-day grace period unless the premium was paid by November 2, 2006. Both the March 2005 and September 2006 past due notices were sent to J. Calverley's address at 1201 Tulip Trail, Mesquite, Texas, the same address listed on the activation form. The September premium was not paid. J. Calverley was killed in an accident on November 1, 2006.

IV.

Applicable Legal Principles

A. Summary Judgment

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986). The moving party has the initial

burden of showing that there is no genuine issue of material fact. Anderson, 477 U.S. at 256. The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements of the non-moving party's claim "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986).

Once the moving party has carried its burden under Rule 56(c), the non-moving party must do more than merely show that there is some metaphysical doubt as to the material facts. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The party opposing the motion may not rest on mere allegations or denials of pleading, but must set forth specific facts showing a genuine issue for trial. Anderson, 477 U.S. at 248, 256. To meet this burden, the nonmovant must "identify specific evidence in the record, and [] articulate the 'precise manner' in which that evidence support[s] [its] claim[s]." Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994). An issue is material only if its resolution could affect the outcome of the action. Anderson, 477 U.S. at 248. Unsupported allegations, conclusory in nature, are insufficient to defeat a

proper motion for summary judgment. <u>Simmons v. Lyons</u>, 746 F.2d 265, 269 (5th Cir. 1984).

B.   <u>Motion to Dismiss</u>

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a case is properly dismissed when the court "lacks the statutory or constitutional power to adjudicate the case." <u>Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.</u>, 143 F.3d 1006, 1010 (5th Cir. 1998) (citations omitted). When confronted with a challenge to its jurisdiction, the court has broad power to weigh the evidence and satisfy itself that it has jurisdiction to hear the case. <u>Williamson v. Tucker</u>, 645 F.2d 404, 412-13 (5th Cir. 1981). When a defendant challenges the plaintiff's jurisdictional allegations, "the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." <u>Ramming v. United States</u>, 281 F.3d 158, 161 (5th Cir. 2001).

In evaluating whether a complaint states a viable claim to survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the court construes the allegations of the complaint favorably to the pleader. <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974). However, the court does not accept conclusory allegations or unwarranted deductions of fact as true. <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 561-63 (2007); <u>Tuchman v. DSC</u>

Communications Corp., 14 F.3d 1061, 1067 (5th Cir. 1994). A plaintiff must allege enough facts to "nudge[] [her] claims across the line from conceivable to plausible," or the complaint must be dismissed. Bell Atl., 550 U.S. at 570. On a motion to dismiss for failure to state a claim, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

V.

Analysis

A. Motion to Amend

Plaintiff seeks to amend her complaint the second time to add a claim of joint enterprise against Hartford and Merrick based on the activation form. The court is denying the amended motion to amend. The scheduling order signed by the court established July 13, 2010, as the deadline for parties to amend pleadings. Although plaintiff argues that she is entitled to amend her complaint "as of right" pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, "Rule 16(b) governs amendment of pleadings after a scheduling order deadline has expired." S & W Enters., L.L.C. v. SouthTrust Bank of Ala., NA, 315 F.3d 533, 536 (5th Cir. 2003). A party may amend pursuant to Rule 16(b)

only upon a showing of "good cause" and with consent of the court. Fed. R. Civ. P. Rule 16(b)(4).

The Fifth Circuit considers four factors when determining if good cause has been shown: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." S&W Enters., 315 F.3d at 536. Because plaintiff argued for leave to amend under Rule 15(a), she did not attempt to argue the factors showing good cause, and the court finds none on its own.

At least three of the factors weigh against allowing the proposed amendment: failure to timely move for leave to amend, potential prejudice, and importance of the amendment. Plaintiff knew of the activation form by at least July 13, 2010, when she filed her amended petition. Plaintiff offers no explanation for why she waited until after Hartford filed its summary judgment motion to attempt to add additional claims against Hartford.

Additionally, plaintiff filed her amended motion to amend almost a month after Hartford filed its motion for summary judgment. Allowing amendment at this late stage would unduly prejudice Hartford by changing the nature of the litigation. See Overseas Inns S.A. P.A. v. United States, 911 F.2d 1146, 1151

(5th Cir. 1990) (affirming denial of motion to amend complaint filed after defendant filed its motion for summary judgment). Plaintiff has also failed to demonstrate the importance of the proposed amendment, as it is devoid of any factual allegations that would support the proposed new theory of recovery.

B.  Motion for Summary Judgment

   1.  DTPA Claim

In her response, plaintiff concedes that her DTPA claim is not appropriate against Hartford, and she has abandoned that claim as to Hartford.

   2.  Breach of Contract and Article 21.55 Claim

Plaintiff's breach of contract claim is premised on Hartford's failure to pay the $250,000 of Voluntary Coverage upon the death of J. Calverley. Hartford contends that J. Calverley failed to pay the premiums when due, resulting in termination of the Voluntary Coverage.

In Texas, "payment of the premium in accordance with the provisions of an insurance policy is a condition precedent to the establishment of liability of the insurer." Walker v. Fed. Kemper Life Assurance Co., 828 S.W.2d 442, 449 (Tex. App.--San Antonio 1992, writ denied). Failure to pay insurance premiums when due causes the policy to lapse and become ineffective. Id.

13

at 447; MacIntire v. Armed Forces Benefit Ass'n, 27 S.W.3d 85, 89 (Tex. App.--San Antonio 2000, no pet.). When the grace period provided in an insurance policy passes without payment of the overdue premium, the policy lapses and terminates, leaving no contract which can be breached. MacIntire, 27 S.W.3d at 89.

Hartford's summary judgment evidence shows that it attempted on September 6 and 15, 2006, to bill J. Calverley's Merrick account for the premium payments due on his Voluntary Coverage. Those attempts were rejected. Hartford informed J. Calverley by letter dated September 18, 2006, that it had been unable to collect his premium payments from his account, and that coverage under the policy would be cancelled after expiration of the thirty-one-day grace period if the defaulted premiums were not paid by November 2, 2006. Hartford shows no record of payment by J. Calverley of the defaulted premiums before the date of his death on November 1, 2006, and plaintiff concedes that she has no evidence of any such payment. Accordingly, the Voluntary Coverage lapsed as of no later than the end of the grace period, on or about October 9, 2006.[6] Id. at 89-90; see also P.M. Baker

---

[6] Read literally, the language of the policy and the certificate of insurance leads to the conclusion that the Voluntary Coverage lapsed in September 2006, the "Premium Due Date," when the premium was not paid when due. However, the parties seem to have assumed that the insurance coverage did not terminate until the end of the 31-day grace period. Either way, the coverage terminated prior to the death
(continued...)

v. Penn Mut. Life Ins. Co., 617 S.W.2d 814, 816 (Tex. Civ. App.--Houston [14th Dist.] 1981, no writ).

Although admitting she lacks evidence of payment, plaintiff relies on Grand Lodge Colored K.P. of Tex. v. Green, 69 S.W.2d 149 (Tex. Civ. App.--Waco 1934, writ dism'd w.o.j.), for the premise that Hartford waived its right to deny Voluntary Coverage benefits due to nonpayment because Hartford required plaintiff to provide proof of death, such as a notice of claim, a death certificate, and a copy of the accident report.

Plaintiff's reliance on Green is unavailing. First, that case is distinguishable on its facts. In Green only one insurance policy was at issue, and the court found that requiring proof of death, despite knowing that the policy lapsed for nonpayment, resulted in waiver of the forfeiture. In contrast, here, J. Calverley was insured for $250,000 of Voluntary Coverage and $1,000 of Basic Coverage. Whatever the status of the Voluntary Coverage, Hartford was entitled to request proof-of-death documentation from plaintiff prior to payment of the claim for Basic Coverage--a claim plaintiff admits Hartford paid.

---

[6](...continued)
of J. Calverley.

15

Further, in an opinion issued three years after <u>Green</u>, the Texas Supreme Court held that where forfeiture occurs prior to the insured's death, waiver of the forfeiture cannot restore the life insurance contract. <u>Gibralter Colo. Life Co. v. Taylor</u>, 123 S.W.2d 318, 321 (Tex. 1939); <u>see</u> <u>also</u> <u>Allstate Ins. Co. v. Mooney</u>, 562 S.W.2d 950, 952 (Tex. Civ. App.--Amarillo 1978, writ refused n.r.e.) (where insured died after insurance policy lapsed for non-payment, request for proof of death by insurance company did not waive termination of the lapsed policy). J. Calverley's forfeiture occurred on or around October 9, 2006, when he failed to pay the required premium within the allotted grace period. No policy of Voluntary Coverage was in effect on the date of his death, and plaintiff has adduced no evidence or authority to show otherwise. Thus, there was no Voluntary Coverage policy in effect at the time of J. Calverley's death to which waiver would apply.

Similarly, to hold Hartford liable under article 21.55 of the Texas Insurance Code requires plaintiff to show, <u>inter alia</u>, that the insurer is liable for the claim. <u>Allstate Ins. Co. v. Bonner</u>, 51 S.W.3d 289, 291 (Tex. 2001). For the reasons discussed above, when the Voluntary Coverage lapsed due to nonpayment, no policy remained in effect under which Hartford

16

could be liable for a claim or from which could arise a violation of article 21.55.

   3. <u>Plaintiff's Motion for Continuance</u>

Plaintiff asks that the court grant her a continuance prior to ruling on Hartford's summary judgment motion in order that she might obtain further discovery from Merrick. To prevail on such a motion plaintiff must "specifically explain both why [she] is currently unable to present evidence creating a genuine issue of fact and how a continuance would enable [her] to present such evidence." <u>Access Telecom, Inc. v. MCI Telecom. Corp.</u>, 197 F.3d 694, 719 (5th Cir. 1999) (internal citations omitted). In seeking a continuance a party "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts in opposition to summary judgment." <u>Id.</u> at 720.

Here, the stated purpose for which plaintiff seeks a continuance is to obtain additional discovery from Merrick. Plaintiff contends as a basis for the motion that despite an earlier subpoena for documents, Merrick failed to produce many of the documents pertaining to the credit card obtained by J. Calverley from Merrick. Plaintiff identifies nothing from

17

Hartford it expects to seek or obtain in order to respond to Hartford's motion for summary judgment.

Plaintiff also fails to adequately demonstrate that she used due diligence to obtain the documents during the discovery period prior to seeking a continuance. <u>Baker v. Am. Airlines, Inc.</u>, 430 F.3d 750, 756 (5th Cir. 2005). Plaintiff asserts that <u>prior to litigation</u>, she requested account documents from Merrick, and that she further subpoenaed such documents from Merrick prior to joining it as a party. Although plaintiff now contends Merrick failed to produce all the responsive documents plaintiff believes are in Merrick's custody or control, she fails to demonstrate any efforts she made to obtain such documents from Merrick during the course of litigation. Accordingly, the court concludes that plaintiff's motion for continuance should be denied.

C.  <u>Motion to Dismiss</u>

The court concludes that the motion to dismiss is premature and should be denied. The grounds asserted in the motion rely on evidence not before the court or are more appropriate for a motion for summary judgment.[7] Merrick may assert those grounds in such a motion if it so chooses.

---

[7] For example, the motion relies in part on terms of the cardholder agreement between Merrick and J. Calverley; however, that agreement is not in the record before the court.

Also of concern to the court is the role of the activation form in relation to plaintiff's claims against Merrick. The court is not convinced that the activation form represents a contract between plaintiff and Merrick, as plaintiff repeatedly contends. However, Merrick in its response to the motion to amend initially relied on the affidavit of Jeff Smith ("Smith"), its senior vice-president of marketing, who averred that: the activation form "was not propagated, printed or otherwise created by Merrick or any agent or employee of Merrick," Merrick's Resp. in Opp'n to Pl.'s Am. Mot. for Leave to Amend Pleadings, Ex. A at 2; it was not a Merrick contract or form; it was not, and never had been, in the care, custody or control of Merrick or Merrick's agents or employees; Merrick never received the form or kept it in Merrick's records; and that Gary Pierce, the licensed agent's name who appeared on the form, was not an agent or employee of Merrick. In sum, Merrick initially disavowed all knowledge of the activation form. However, on October 19, 2010, Merrick filed a notice of withdrawal of Smith's affidavit, indicating that its investigation of this matter is ongoing and that it no longer intends to rely on Smith's affidavit. Under these circumstances, the court concludes that dismissal of plaintiff's claims against Merrick would be premature at this stage.

# VI.

## Order

Therefore,

The court ORDERS that:

(1) Hartford's motion for summary judgment be, and is hereby, granted, and all claims and causes of action asserted by plaintiff against Hartford be, and are hereby, dismissed with prejudice; and,

(2) Plaintiff's motion for continuance, plaintiff's amended motion to amend, and Merrick's motion to dismiss be, and are hereby, denied.

The court further ORDERS that the style of this action be modified by the elimination of "Hartford Life and Accident Insurance Company," from the style so that from this point forward the style of this action shall be "Janice Calverley, Plaintiff, v. Merrick Bank Corporation, defendant."

The court determines that there is no just reason for delay in, and hereby directs, entry of final judgment as to such dismissal.

SIGNED November 1, 2010.

JOHN McBRYDE
United States District Judge